# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PANEL SPECIALISTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-4140-SAC |
| | ) | |
| TENAWA HAVEN PROCESSING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This case comes before the court upon defendant Tenawa Haven Processing, LLC's ("Tenawa's") Motion to Compel plaintiff Panel Specialists, Inc. ("PSI") to answer Interrogatory No. 5. For the following reasons, this motion is denied.

### I.

PSI sued Tenawa for more than $600,000 in unpaid invoices for work that PSI performed in connection with the construction of Tenawa's gas processing plant in Haven, Kansas. Tenawa asserted counterclaims against PSI for damages due to defective and delayed work on the project by PSI. Tenawa also believes that it can show that PSI excessively marked up the cost of materials and equipment that PSI purchased for the construction of the plant in the invoices PSI submitted to Tenawa. Tenawa issued discovery to PSI regarding these mark-ups, including Interrogatory No. 5 which requested information about mark-ups PSI applied to other customers on other projects.

> INTERROGATORY NO. 5: Identify and describe each instance from January 1, 2007 to the present where PSI charged a mark-up or commission to a customer on labor, equipment, materials, or services provided to PSI by a third party which was then used by PSI on a project for the customer. For each instance, identify (i) the name and contact information of the third party that provided the labor, equipment, materials, or services to PSI; (2) the name and contact information for the customer; (3) a description of the labor, equipment,

materials, or services provided by the third party; (4) the date the labor, equipment, materials, or services were provided to PSI by the third party; (5) the amount PSI paid the third party for the labor, equipment, materials, or services; (6) the amount PSI billed the customer for the labor, equipment, materials, or services provided by the third party; and (7) a description of the project for the customer.

In its initial response, PSI objected to Interrogatory No. 5 as overly broad, and invasive of confidential information between PSI and its other customers:.

> ANSWER TO INTERROGATORY NO. 5: PSI objects to this Interrogatory as overly broad, vague, ambiguous and invasive of confidential, protected information between PSI and its other customers. The discovery request is overly broad in that it is well-known and common in the industry that contractors mark-up labor, equipment and materials, that this request asks PSI to list out, with specifics, all of its work for the prices ten years plus. Thus, the discovery request does not pertain to a non-privileged matter that is relevant to any party's claim or defense, and even if relevant is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issue, and that the burden or expense of the proposed discovery request outweighs its likely benefit.

After some further discussions between the parties to confer concerning the discovery dispute, PSI agreed to identify by name customers for whom it charged a mark-up or commission for labor, equipment, or materials provided to PSI by a third-party for the years 2012 through 2016. Counsel for Tenawa objected to this supplemental answer, requesting detailed information concerning a specific "mark-up" for each customer. Counsel for the parties then conferred again via email and over the phone in an effort to find some middle ground regarding Interrogatory No. 5, but were unable to reach an agreement. Tenawa now seeks to compel PSI to answer this interrogatory. Tenawa alleges:

> PSI admits that the standard markup in the industry for purchases of equipment and materials is 10% to 15%, but argues that the 25% that it now claims to have marked up Tenawa's invoices is reasonable because it allegedly took more effort and time by PSI than normal to select and order the equipment and material for this project. However, at the same time, PSI refuses to produce

any other information (other than customer names) about other instances where it has marked up invoices on other projects… Tenawa is entitled to the information it requested in Interrogatory No. 5 so PSI [sic] can make that determination for itself and so that it can conduct follow-up discovery on any of those third parties, if necessary.

In response, PSI has suggested that it would be a "next to impossible task to provide the information" sought by Tenawa, and the information sought is not proportional to needs of this case.

II.

Rule 26(b)(1) of the Federal Rules of Civil Procedure outlines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Considerations of both relevance and proportionality now govern the scope of discovery.[1] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[2] Information still "need not be admissible in evidence to be discoverable."[3] The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase,

---

[1] See Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[2] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[3] Fed. R. Civ. P. 26(b)(1).

however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[4]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[5] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[6] In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[7] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[8] Relevancy determinations are generally made on a case-by-case basis.[9]

---

[4] See Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[5] *Id.*

[6] *Id.*

[7] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[8] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[9] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

Whether any particular discovery request is proportional is to be determined by considering, to the extent applicable, the following six factors: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.[10] Objections based on undue burden must be clearly supported by an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.[11]

III.

With these legal standards in mind, the court considers whether PSI should be compelled to produce the specific mark-ups charged by PSI for prior transactions with other customers pre-dating the events giving rise to the adverse parties' claims. The facts before the court show that PSI and Tenawa signed a Master Service Agreement ("MSA"), in which Tenawa hired PSI to serve as the instrumentation and electrical contractor for the construction of the plant in Haven. The MSA was a cost-plus contract, but was silent on the amount of mark-up or commission that PSI could charge Tenawa for materials and equipment that PSI purchased for the plant. During the course of this litigation, counsel for the parties have had discussions concerning the appropriate mark-ups in the industry. Tenawa contends that, on two occasions, PSI has been

---

[10] Fed. R. Civ. P. 26(b)(1).

[11] *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004); *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003) (objecting party cannot sustain burden with boilerplate claims that requested discovery is burdensome); and *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 646 (D. Kan. 2003) (overruling objection of undue burden based in part on lack of affidavit or other proof)).

"caught and essentially admitted" charging Tenawa with excessive mark-ups on equipment and materials purchased for the plant.

The parties have raised several contentions with which the court must take issue. First, the circumstances noted by Tenawa do not show that PSI has "admitted" to overcharging Tenawa for equipment and materials for this project. Tenawa cited two events as support for this contention: (1) PSI sending "replacement" invoices for those previously sent by PSI from February 4-13, 2015; and (2) PSI reducing the amount owed by Tenawa in its amended Rule 26(a)(1) disclosures. While these instances may provide some support for Tenawa's contention about PSI's alleged overcharging, they certainly do not demonstrate "admissions" of overcharging by PSI. Second, Tenawa has indicated that PSI has admitted a standard mark-up in the industry of 10 to 15 percent for purchases of equipment and materials. In the present record, the court finds no support for this contention. Finally, Tenawa contends that PSI has acknowledged that it used a 25 percent mark-up for the project in Haven. Again, the court finds no support for this assertion. PSI repeatedly states that the amount of mark-up in each situation is fact-specific and requires an examination of the type of equipment or service provided.

With regard to the contentions raised by PSI, the court is also not persuaded by at least one of the arguments raised by it. PSI suggests that the production of the names of its customers for whom it charged a mark-up or commission for labor, equipment and materials for the years 2012 through 2016 was a "time-consuming, arduous task in and of itself." PSI, however, failed to provide any support for this contention. PSI failed to provide any evidence to support the degree of effort required for this endeavor.

PSI has produced an affidavit from, Denise Bergeron, its Vice-President/Secretary. Ms. Bergeron has indicated that she was personally involved in the work performed by PSI for

Tenawa and the issues related to billing and invoicing. She notes that PSI is a "small, family owned corporation." She states that she is the only PSI employee in the office and she would be responsible for locating all documents or information on the mark-ups previously charged. She further states she would have to "devote several weeks of time to even begin to respond to [Interrogatory No. 5]." She notes that answering the interrogatory would require "significant time" because "there was no 'standard' mark-up as each mark-up varies based on the requirements of each job, type of equipment or materials purchased and the amount of office time to locate the item." In sum, she believes that compliance with Tenawa's request would "place a significant burden in both time and expense on the company."

The circumstances of this case present a close question on this issue. Nevertheless, the court is persuaded that the information sought by Tenawa in Interrogatory No. 5 is not proportional to the needs of the case, considering the relevant factors under Rule 26(b)(1). PSI has adequately explained and supported its contention concerning the burden of producing the requested information. This explanation coupled with the minimal probative value of the requested material suggests that Tenawa's request is not proportional. The specific mark-ups charged by PSI to other customers are not probative of the mark-up charged to Tenawa in connection with PSI's work on the Haven facility. As suggested by PSI, the facts and circumstances of each project dictate the appropriate mark-up or commission. Tenawa's motion to compel is denied.

Under Federal Rules of Civil Procedure 37(a)(5)(B), the court determines that, under the all of the circumstances presented, PSI's request for fees and expenses shall be denied. The information sought by Tenawa in Interrogatory No. 5 was not irrelevant, but it could not have

predicted the burden it would place on PSI.  Thus, Tenawa's  motion to compel was substantially justified and the award of fees and expenses to PSI would be unjust.

Accordingly,

**IT IS THEREFORE ORDERED** that defendant's Motion to Compel Panel Specialists, Inc. to Fully Answer Interrogatory No. 5 (ECF No. 49) is hereby denied.

**IT IS FURTHER ORDERED** that Panel Specialists, Inc.'s request for fees and expenses (ECF No. 51) is denied.

**IT IS SO ORDERED.**

Dated this  16th day of August, 2017, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge